```
                                        USDC SDNY
                                        DOCUMENT
                                        ELECTRONICALLY FILED
                                        DOC #:_____
                                        DATE FILED: April 1, 2021
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------X
CARAWAY HOME, INC.                  :
                                    :
                  Plaintiff,        :          20 Civ. 10469
                                    :
     - against -                    :      **DECISION AND ORDER**
                                    :
PATTERN BRANDS, INC.                :
D/B/A EQUAL PARTS,                  :
                  Defendant.        :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Caraway Home, Inc. ("Caraway" or "Plaintiff") brings this action against Pattern Brands, Inc. doing business as Equal Parts ("Equal Parts" or "Defendant"). The Complaint alleges nine counts -- including for trade dress and trademark infringement in violation of the Lanham Act and common law; unfair competition in violation of the Lanham Act and common law; deceptive practices and false advertising in violation of the New York General Business Law; and trademark dilution and injury to business reputation in violation of the New York General Business Law, among others -- stemming from Equal Parts's sale of cookware. (See "Complaint," Dkt. No. 1.)

Now before the Court are the premotion letters filed by the parties regarding Equal Parts's contemplated motion to dismiss the Complaint. On February 18, 2021, Equal Parts notified Caraway of alleged deficiencies in the Complaint's

1

allegations of trade dress infringement and trademark infringement and requested dismissal of the action (the "February 18 Letter"). (See Dkt. No. 19.) Caraway responded by letter dated February 25, 2021 (the "February 25 Letter"). (See Dkt. No. 20.) Equal Parts replied by letter dated March 2, 2021 (the "March 2 Letter"). (See Dkt. No. 21.)

The Court now construes Defendant's letters as a motion by Defendant to dismiss Caraway's trade dress and trademark claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (collectively, the "Letter Motion").[1] For the reasons set forth below, the Letter Motion is GRANTED IN PART and DENIED IN PART.

## I.     BACKGROUND

A.   FACTUAL BACKGROUND[2]

Caraway is a corporation that designs, manufactures, and sells cookware and related items. According to Caraway, it has quickly become a well known and respected company providing direct-to-consumer sales and represents "a new

---

[1] Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court's ruling deeming exchange of letters as motion to dismiss).

[2] The Court presumes familiarity with the factual background of this litigation, which was described in greater detail in the Court's previous decisions, and provides only the facts necessary to resolve Defendants' Letter Motion. Except as otherwise noted, the factual background below derives from the Complaint and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. Except when specifically quoted, no further citation will be made to the Complaint. When quoting the Complaint, all internal quotation marks are omitted.

generation of cookware." (Complaint ¶ 11.) Caraway's cookware has received significant media coverage for its stylish design and variety of colors. Caraway sells sets of cookware (the "Cookware Sets") that consist of a fry pan, sauce pan, sauté pan, and Dutch oven.

### 1.   Trade Dress Allegations

Caraway alleges that its Cookware Sets uses many distinctive and nonfunctional features to identify the origin of its Cookware Sets and their components. Caraway also contends that as a result of its continuous and exclusive use of these designs, marketing, advertising, sales, and media coverage, its designs have acquired a secondary meaning and are uniquely associated with Caraway.

As to its fry pan, sauté pan, and sauce pan (collectively, the "Caraway Pans"), Caraway alleges that it has trade dress rights in the overall look and appearance of the Caraway Pans, including but not limited to:

> the visual flow of the handle; the curves, tapers and lines in the Caraway Pans; the design, style and visual appearance of these curves (including the flattened curve of the lid shown on FIG, 4), tapers and lines in the Caraway Pans; the visual connection and relationship between the curves, tapers and lines in the Caraway Pans; the style, design and appearance of design aspects of the Caraway Pans handle; the design and appearance of the deep bowl-shape with high sidewalls of the Fry Pan interior; the design and appearance of the glossy finish exterior of the Caraway Pans; the design and appearance of the gloss finish

> throughout the Caraway Pans, including on the
> handles, interior, and exterior; and the design,
> appearance and lines of the Fry Pan shiny stainless
> steel handle.

(Id. ¶ 28.) Similarly, Caraway alleges that it has trade dress

rights in the overall look and appearance of the Caraway Pans'

handle, such as:

> its U-shaped, wide-stance space attaching the
> handle to the rounded pan; the visual appearance of
> the curves, tapers and lines associated therewith;
> the design, style, visual appearances, curves,
> tapers and lines of the open space formed between
> the edge of the handle at its center, and the pan;
> the design, style, visual appearances, curves,
> tapers and lines of the two attachment portions of
> the handle to the pan; the design, style, visual
> appearances, curves, tapers and lines of the
> flattened top side of the handle; the design,
> style, visual appearances, curves, tapers and lines
> of the rounded underside of the handle; the design,
> style, visual appearances, curves, tapers and lines
> of the handle being thinner at the end closer to
> the pan, and thicker farther from the pan; and
> the design, style, visual appearances, gloss, shiny
> stainless steel, curves, tapers and lines of the
> thick distal hole formed at the distal end of the
> handle.

(Id. ¶ 29.) Caraway further alleges that it has trade dress

rights in the overall look and appearance of the Caraway Pans

lid, particularly its flattened, disc shape, which provides

a more aesthetically pleasing look distinct from glass and

stainless steel, and the visual appearance of the associated

curves, tapers, and lines. Finally, Caraway alleges it has

trade dress rights in the overall look, design, and appearance

of its cream colored and navy-blue colored cookware.

Defendant launched in 2019, and the Equal Parts branch was introduced in September 2019. Equal Parts failed to meet the growth expectation of its founders, investors, and the general market. When Equal Parts launched, it focused on selling low-priced, all-black cookware with flash style photography, and its market positioning focused on a text-a-chef service as its main value proposition. In a Harvard Business School Study, Defendant acknowledged that Equal Parts was a failure, the contrast with Caraway's successful launch, and the praise Caraway received for its unique design and colors.

On September 29, 2020, Equal Parts relaunched with a new aesthetic that intentionally represented Caraway's design of glossy colored cookware with shiny stainless-steel handles, cream and navy coloring, flat lids, as well as similar photography and marketing materials. One media source, The Daily Beast, found Equal Parts to be nearly identical to Caraway. Caraway alleges that Equal Parts's products are confusingly similar imitations of its cookware and are offered in substantially the same form. Equal Part's actions have not been authorized by Caraway. Caraway includes the following image to demonstrate the differences between the various products at issue:



| Equal Parts (prior to relaunch) | Caraway | Equal Parts (post relaunch) |
| --- | --- | --- |

(Id. at 16.) In particular, Caraway alleges that Equal Parts uses Caraway's trade dress related to the handles, navy blue and cream colors, light interior color, and unique lid designs of the Caraway Pans.

### 2.   Trademark Allegations

Caraway owns the valid and subsisting United States Trademark Registration No. 6,115,214 on the Principal Register in the United States Patent and Trademark Office ("USPTO") for the trademark "Caraway" (the "Caraway Mark") for cookware, namely, stock pots, sauté pans, frying pans,

sauce pans, stir-fry pans, skillets, Chef's pans made of ceramic, pot holders, Dutch ovens, oven mitts, coasters not of paper or textile in Class 21, dish towels, and coasters of textile in Class 24.

Without Caraway's authorization, Defendant began purchasing Google Adwords and Google Shopping Advertisements in the United States for the Caraway Mark and related branded search terms so as to advertise the Equal Parts brand when consumers searched for "Caraway" using Google's search engine. Defendant has marketed, advertised, promoted, and otherwise purchased the Caraway Mark as adwords and keywords via search engines. Defendant's use is likely to deceive consumers, Caraway contends.

B.   <u>PROCEDURAL HISTORY</u>

Caraway filed the instant suit on December 10, 2020. Count One alleges trade dress infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a); Count Two alleges unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); Count Three alleges common law trade dress infringement; Count Four alleges common law unfair competition; Count Five alleges deceptive practices and false advertising in violation of the New York General Business Law §§ 349, 350; Count Six alleges trademark dilution and injury to business reputation in violation of

the New York General Business Law § 360-l; Count Seven alleges trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1141(1); Count Eight alleges unfair competition based on the purchase and use of the Caraway Mark as adwords and keywords in search engines in violation of the Lanham Act, 15 U.S.C. § 1125(a); and Count Nine alleges federal trademark dilution.

C.   THE PARTIES' ARGUMENTS

Equal Parts makes three primary arguments challenging the sufficiency of Caraway's allegations as to trade dress and trademark infringement. First, Equal Parts argues that Caraway has not met the Second Circuit's pleading requirements for unregistered product configurations. Equal Parts contends that the descriptions of the claimed trade dress are not sufficiently specific, and Caraway has not adequately pled how the relevant product configurations are nonfunctional. Equal Parts further asserts that while Caraway has pled general facts about its commercial success, the "factual allegations do not point to advertising or consumer recognition of these product features as a brand." (February 18 Letter at 3.)

Second, Equal Parts argues that Caraway's allegations of likelihood of confusion between its products and Caraway's

are implausible given the stark differences between the
products. Equal Parts includes the following image:



(Id. at 1.)

Third, Equal Parts argues that Caraway's trademark
infringement claims must fail because "the Complaint does not
allege that Defendant's advertisements themselves use
Plaintiff's CARAWAY mark." (Id. at 3.) Equal Parts cites
Alzheimer's Disease and Related Disorders Association, Inc.
v. Alzheimer's Foundation of America, Inc., 307 F. Supp. 3d
260, 291 (S.D.N.Y. 2018), for the proposition that keyword
advertising does not support a claim of trademark
infringement if the advertisement itself did not infringe on
a plaintiff's trademark.

Caraway responds that Defendant's arguments are
meritless. As to its trade dress claims, Caraway argues that
it has alleged the elements of it trade dress with sufficient
specificity to survive at the motion-to-dismiss stage,
particularly because the Complaint contains numerous pictures
of the products. Caraway also notes that functionality,
secondary meaning, and likelihood of confusion are fact-

9

intensive inquiries not suitable for resolution on a motion to dismiss. As to its trademark infringement claims, Caraway argues that Alzheimer's Disease, 307 F. Supp. 3d 260, is distinguishable as it did not involve a motion to dismiss.

In its reply, Equal Parts argues that Caraway cannot cure the identified deficiencies because its claimed trade dress is directed towards common, everyday cookware features and because the case law forecloses its theory of trademark infringement.

## II.   LEGAL STANDARD

### A.   RULE 12(b)(6) MOTION TO DISMISS

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a

10

complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>In re Initial Pub. Offering Sec. Litig.</u>, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Tenney v. Credit Suisse First Boston Corp.</u>, No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); <u>accord</u> <u>In re MF Glob.</u> <u>Holdings Ltd. Sec. Litig.</u>, 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context, the Court must draw reasonable inferences in favor of the nonmoving party. <u>See</u> <u>Chambers v.</u> <u>Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the claim as true does not extend to legal conclusions. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

In adjudicating a Rule 12(b)(6) motion, a court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." <u>Leonard F. v. Israel</u> <u>Disc. Bank of N.Y.</u>, 199 F.3d 99, 107 (2d Cir. 1999).

B.    <u>THE LANHAM ACT</u>

A plaintiff alleging trademark or trade dress infringement under the Lanham Act "must demonstrate that (1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark." Tiffany and Co. v. Costco Wholesale Corp., 971 F.3d 74, 84 (2d Cir. 2020). In determining the second prong, courts use the eight-factor test articulated in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.3d 492 (2d Cir. 1961) (the "Polaroid Factors"):

> (1) the strength of the trademark; (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use; (3) the proximity of the products and their competitiveness with each other; (4) the likelihood that the plaintiff will 'bridge the gap' by developing a product for sale in the defendant's market; (5) evidence of actual consumer confusion; (6) evidence that the defendant adopted the imitative term in bad faith; (7) the respective quality of the products; and (8) the sophistication of the relevant population of consumers.

Tiffany, 971 F.3d at 84-85 (footnotes omitted).

C.   TRADE DRESS INFRINGEMENT

"Trade dress today encompasses a broad concept of how a product presented to the public looks, including its color, design, container, and all the elements that make up its total appearance." GeigTech East Bay LLC v. Lutron Elec. Co., Inc., 352 F. Supp. 3d 265, 274 (S.D.N.Y. 2018) (brackets and citation omitted). In order for a product's unregistered

trade dress to be protected so as to meet the first prong of infringement under the Lanham Act, the trade dress must be "not functional," and there must be "a likelihood of confusion between a claimant's product and a competing product." Id.

The Second Circuit has noted that courts should "exercise particular caution, when extending protection to product designs." Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 380 (2d Cir. 1997) (internal quotation marks and citation omitted). This is because "even the most unusual of product designs" are "almost invariably" meant "not to identify the source of the product, but to render the product itself more useful or more appealing." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 114-15 (2d Cir. 2001) (internal quotation marks and citation omitted). "And trade dress claims raise a potent risk that relief will impermissibly afford a level of protection that would hamper efforts to market competitive goods." Id. (internal quotation marks and citation omitted).

Thus, a plaintiff asserting trade dress rights in the design of a product must show the following. First, the plaintiff must offer "a precise expression of the character and scope of the claimed trade dress." GeigTech, 352 F. Supp. 3d at 274 (internal quotation marks and citation omitted). The product cannot be described "at an improper level of

13

generality," that is, a level of generality that suggests "the claimant seeks protection for an unprotectible style, theme or idea," or "that the dress is no more than a concept or idea to be applied to particular products." Yurman Design, 262 F.3d at 117 (internal quotation marks and citations omitted). "[A] plaintiff asserting that a trade dress protects an entire line of different products must articulate the specific common elements sought to be protected." Id. at 118.

Second, the plaintiff must show "that the matter sought to be protected is not functional." GeigTech, 352 F. Supp. 3d at 275 (quoting 15 U.S.C. § 1125(c)(4)). "In cases involving the aesthetic features of a product, trade dress is functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." Id. (citation omitted).

Third, a plaintiff must show that its trade dress has acquired secondary meaning, which "has been interpreted by the Supreme Court to mean that a plaintiff must show that its trade dress is distinctive." Id. A product can develop a secondary meaning in the marketplace and thereby acquire distinctiveness when "in the minds of the public, the primary significance of a product feature is to identify the source

of the product rather than the product itself." <u>Id.</u> (internal quotation marks, brackets, and citation omitted).

Fourth, a plaintiff must show "that the defendant's product is so similar that it is likely to cause confusion about the product's actual source." <u>Id.</u>

While these elements must be proven in order to ultimately prevail on a claim for trade dress infringement, at the motion to dismiss stage, "a plaintiff need only articulate sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id.</u> (internal quotation marks and citation omitted).

### III. <u>DISCUSSION</u>

The Court grants in part and denies in part the Letter Motion. Namely, the Court grants Equal Parts's request to dismiss the counts stemming from its alleged infringement of Caraway's trade dress. However, the Court denies Equal Parts's request to dismiss the claims for trademark infringement stemming from its use of the Caraway Mark for keyword advertising.

A. <u>TRADE DRESS CLAIMS</u>

Caraway has failed to allege the first two requirements of a protectible trade dress. That is, Caraway has failed to provide a precise explanation of most of the claimed trade dress. Much of the description Caraway provides for its

claimed trade dress is too vague to constitute an adequate description. Even with respect to the trade dress elements that have been described in sufficient detail, Caraway has not explained how these elements are distinctive for all but the Caraway Pans lid. Moreover, Caraway has failed to include any allegations to plausibly suggest that the claimed trade dress is nonfunctional. Thus, Caraway's trade dress claims are dismissed.

1.   A Precise Explanation of the Claimed Trade Dress

Besides providing "an articulation of the specific elements which comprise its distinct dress," Landscape Forms, 113 F.3d at 381, "[a] trade dress infringement claimant must enumerate which features of its purported dress are distinctive and indicate how they are distinctive." GeigTech, 352 F. Supp. 3d at 276.

One court in this district has held that allegations that a claimed trade dress "includes the size, shape and color of the product and its packaging" and conclusory statements that the products at issue "had unique elements of style, shape, angle, height, width, and/or slant" are insufficient because such "sweeping descriptions . . . in fact denote categories of features, not the features themselves." Tracey Tooker & TT Ltd., Inc. v. Whitworth, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (internal quotation marks and citations

omitted). Nor was inclusion of images of the products sufficient to sustain trade dress claims in light of the plaintiff's general description of the products. Id. Similarly, in dismissing a complaint claiming trade dress over a line of watches, another court in this district stated that "a high level description of features of several watches, such as 'gradient chain,' 'lobster claw closure,' and 'leaf-shaped logo,' without allegations as to whether and how those features are distinctive," failed to sufficiently allege a trade dress claim. Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017).

Here, the Court is persuaded that Caraway has sufficiently described the elements of the claimed trade dress. The description provided in this case falls somewhere between the highly specific description pled in GeigTech -- which that court noted was "one of the best-pleaded examples of a trade dress infringement claim" it had ever reviewed, 352 F. Supp. 3d at 275 -- and the more general descriptions provided in Tracey Tooker and Sara Designs. But while much of Caraway's description is vague, Caraway has alleged some more specific elements of its claimed trade dress that are just enough to get Caraway's description across the line.

The Court first takes up the portions of Caraway's description that fall on the more general side. The paragraphs

17

of the Complaint dedicated to outlining Caraway's trade dress contain many references to the "overall look and appearance" of the products, as well as "the visual flow of the handle," "the curves, tapers and lines in the Caraway Pans," "the design, style and visual appearance of these curves," "the visual connection and relationship between the curves, tapers and lines," and the like. (Complaint ¶ 28; see also id. ¶ 29.) These references are imprecise and "fail to give notice of what is claimed to competitors," or even the Court. See YETI Coolers, LLC v. Imagen Brands, LLC, No. 16 Civ. 578, 2017 WL 2199012, at *4 (W.D. Tex. May 18, 2017) (finding that similar descriptions of "visual flow," "curves, tapers, and lines, the design of the same, and the relationship among them" in the plaintiff's claimed trade dress were too vague). And given the broad nature of these references, the photographs included in the Complaint cannot provide any further clarification as to what aspect of the pans are claimed. Such "unclear or overbroad" allegations "pose an anti-competitive risk." Id.

Nonetheless, there are other elements of Caraway's claimed trade dress that are sufficiently specific. For instance, Caraway has described the interior of its frying pan as a "deep bowl-shape with high sidewalls." (Complaint ¶ 28.) It has also identified its handle as having a "U-shaped,

wide-stance space attaching the handle to the rounded pan"
and notes "the open space formed between the edge of the
handle at its center[] and the pan." (Id. ¶ 29.) This
description is bolstered by the attached photographs, which
show clearly the "U-shaped" space to which Caraway refers.
(Id. fig. 6.) Caraway has further described the Caraway Pans
lid as a "flattened, disc-shape" and provided a photograph to
that effect. (Id. ¶ 30, fig. 7.) Finally, Caraway has
identified the cream and navy colors of its cookware and
provided photographs of the same. (Id. ¶¶ 32-33, figs. 8-9.)
Though not as specific as the descriptions given in GeigTech,
the Court is satisfied that these descriptions are
sufficiently concrete to put others on notice of what exactly
Caraway claims as its protectable trade dress.

But while Caraway has provided some "articulation of
which of the plaintiff's trade design elements are
distinctive," Caraway has failed to allege "*how* they are
distinctive" as required for a valid trade dress infringement
claim in this Circuit. See Sara Designs, 234 F. Supp. 3d at
555 (emphasis added). Caraway has only offered conclusory
allegations that it "revolutionized" cookware and that its
trade dress employs "unique, distinctive, and non-functional
designs." (Complaint ¶¶ 2, 46). But there are no allegations

by which the Court can conclude or infer how Caraway's trade dress design elements are distinctive.

In adequately pleading how one's trade dress is distinctive, a plaintiff must provide more than just "a laundry list of the elements" that constitute its product design. Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009). In GeigTech, for example, the plaintiff sufficiently alleged that the trade dress was distinctive as a "'radical departure' from existing technology." 352 F. Supp. 3d at 277. To illustrate the uniqueness of the plaintiff's product, a roller shade system, the plaintiff included pictures of its product as well as previous methods for concealing mounting hardware and explained how the plaintiff's product "was elegant and distinct from traditional methods of window dress, and also allowed for screws and wires to be concealed from view." Id. (citation omitted).

Here, by contrast, Caraway has not included any allegations to explain how it has revolutionized cookware. The Complaint contains no information about typical cookware as compared to Caraway's cookware. At best, Caraway alleges that it took "[w]hat was once a humble kitchen utensil" and "turned [it] into a masterpiece, blurring the lines between art and cookware." (Id. ¶ 2.) But the Second Circuit has

rejected the notion that a common object described as artistic can be "a protectable, source-identifying expression." David Yurman, 262 F.3d at 118. And there is no other detail as to how Caraway's trade dress elements distinguish its cookware from other cookware.

Nor can the Court infer from the design elements themselves how the Caraway Pans differ from normal cookware. Even the more specific trade dress descriptions seem to describe elements common to cookware generally. Take Caraway's description of its frying pan as having a "deep bowl-shape with high sidewalls" and the accompanying photographs. (Complaint ¶ 28, figs. 2-3.) From this description and these photographs alone, the Court cannot discern how the bowl shape and higher sidewalls design elements making up Caraway's frying pan are distinct from other such pans. Similarly, although Caraway describes the Caraway Pans handle and the "U-shaped" space between the handle and pan in detail (id. ¶ 29), there is no information in the Complaint from which the Court can conclude that such design elements are not present in other cookware. It may be that other cookware does not share these same design elements, but Caraway has provided no allegations to support such a conclusion.

In other words, without more explanation on how Caraway Pans differ from other cookware, the Court is left only with the trade dress descriptions that Caraway has alleged. But without allegations of how these elements are uncommon to other cookware, the descriptions shed no additional light on how Caraway's trade dress is distinct. As the Circuit said when evaluating a plaintiff's trade dress claim for its jewelry line, which combined cable jewelry with other elements, "[a] unique combination of elements may make a dress distinctive, but the fact that a trade dress is composed entirely of commonly used or functional elements might suggest that the dress should be regarded as unprotectible or 'generic,' to avoid tying up a product or marketing idea." David Yurman, 262 F.3d at 118 (internal quotation marks and citation omitted).

With that said, the Court finds that Caraway's allegations with respect to the Caraway Pans lid does explain how the design elements of the lid are distinct. The Complaint notes that the flattened, disc shape of the lid "provide[s] for a more aesthetically pleasing look distinct than glass and stainless steel," and the included photographs show that the lid is a thin, flat disc. (Complaint ¶ 30, fig. 7.) The Court is persuaded that these elements sufficiently distinguish the Caraway Pans lid from the average steel or

glass cookware lid. Thus, Caraway has adequately explained how the claimed trade dress with respect to the lid only is distinct.

In short, Caraway has failed to sufficiently plead the first requirement of a trade dress infringement claim -- a precise expression of the character and scope of the claimed trade dress -- for all features but the Caraway Pans lid. The Court will consequently analyze whether the remaining requirements have been pled only with respect to the lid.

## 2.   Nonfunctionality

Trade dress may be traditionally or aesthetically functional. A product feature is traditionally functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." GeigTech, 352 F. Supp. 3d at 279 (citation omitted). A product is aesthetically functional "if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." Yurman Design, 262 F.3d at 116.

"Because functionality is a question of fact, it is often premature to conclude that a plaintiff has failed to establish functionality at the motion to dismiss stage." GeigTech, 352 F. Supp. 3d at 278 (citations omitted). Nonetheless, even at the motion to dismiss stage, "a plaintiff must specifically allege non-functionality." Shandong Shinho Food Indus. Co.,

_Ltd. v. May Flower Int'l, Inc._, No. 19 Civ. 1621, 2021 WL 736710, at *22 (E.D.N.Y. Feb. 25, 2021) (citation omitted). For instance, in GeigTech, the complaint contained "a survey of other methods traditionally used to install roller blinds, and photographs of three alternative mounting techniques," as well as an allegation that the trade dress did not provide a cost or quality advantage in the market. 352 F. Supp. 3d at 280. These allegations made plausible the plaintiff's claim that its trade dress was neither traditionally nor aesthetically functional. Id. at 280-81. On the other hand, a "conclusory statement is insufficient to allege nonfunctionality." Shandong Shinho, 2021 WL 736710, at *22 (holding that the plaintiff failed to plausibly allege nonfunctionality because the complaint only stated that the trade dress "is inherently distinctive and not functional" (citation omitted)).

Here, Caraway has not sufficiently pled nonfunctionality. Although the Complaint contains statements that its "trade dress includes unique, distinctive, and non-functional designs" (Complaint ¶ 46), the Complaint lacks any specific factual allegations that make such a finding plausible. As discussed above, there is no information included in the Complaint about other cookware that could allow the Court to conclude, as the court in GeigTech did,

24

that the product features at issue are not necessary to the use or purpose of the article or would put competitors at a significant non-reputation-related disadvantage were the right to use such features to be limited to the plaintiff. Nor is there so much as a conclusory allegation about the effect on cost or quality. Absent such allegations, Caraway has not specifically alleged nonfunctionality as required.

Because Caraway has failed to adequately plead the first two elements of trade dress infringement, dismissal of Caraway's claims stemming from alleged infringement of its trade dress is appropriate.[3] The Court is not persuaded, however, by Defendant's contention that amending the

---

[3] This includes Counts One through Six of the Complaint. Although not all of these counts allege violations of the Lanham Act, the Court notes that when pled in connection with the misappropriation of trade dress, the elements necessary to prevail on the New York common law claims of unfair competition and the like track those required under the Lanham Act. See, e.g., Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 549 (S.D.N.Y. 2011). Likewise, failure to allege a protectible trade dress renders any claim for trade dress dilution under New York General Business Law § 360-l defective as well. See Shandong Shinho, 2021 WL 736710, at *24.

The Court concludes that the same principle applies to claims for deceptive practices under New York General Business Law §§ 349, 350 based on trade dress infringement. Cf. Michaels v. Unitop Sp. Z.O.O., No. 16 Civ. 1015, 2019 WL 5616700 (N.D.N.Y. Oct. 31, 2019) (granting the plaintiff an opportunity to replead its counterclaims under New York General Business Law §§ 349, 350 to the extent those claims were made with respect to its trade dress claims, which were dismissed but could be repled). Even were that not the case, however, dismissal of Caraway Home's claims under New York General Business Law §§ 349, 350 would be warranted. At best, Caraway has alleged that Equal Parts's "conduct resulted in injury to consumers in the form of consumer confusion," which "is insufficient to state a claim under [New York General Business Law] § 349" and Section 350. See Shandong Shinho, 2021 WL 736710, at *25; see also SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D., P.C., No. 19 Civ. 9582, 2020 WL 1322838, at *3 (S.D.N.Y. Mar. 20, 2020).

Complaint would be futile.[4] The Court therefore dismisses Caraway's trade dress claims without prejudice.

B.   TRADEMARK INFRINGEMENT CLAIMS

Caraway's final three claims are for trademark infringement, unfair competition and false designation, and trademark dilution under the Lanham Act as a result of Defendant's purchase of the Caraway Mark so as to advertise Equal Parts when consumers searched for the term "Caraway" in Google's search engine. Caraway has adequately pled trademark infringement with respect to these claims, and therefore these claims are not dismissed.

The Second Circuit has held that the purchase of trademarks as keywords for internet advertising qualifies as using the mark in commerce as defined in 15 U.S.C. § 1127. See Rescuecom Corp. v. Google Inc., 562 F.3d 123, 129 (2d Cir. 2009); see also Alzheimer's Disease, 307 F. Supp. 3d at 283-84 (citing cases). Thus, Caraway's allegations satisfy the threshold requirement that Equal Parts used the Caraway Mark in commerce. In order to prevail, however, Caraway must also show that the Caraway Mark is a valid trademark entitled

---

[4] Equal Parts relies primarily on what it contends are "stark differences" between its products and the claimed trade dress in arguing futility. (March 2 Letter at 1.) But likelihood of confusion poses a factual dispute that does not lend itself to resolution at the motion to dismiss stage. GeigTech, 352 F. Supp. 3d at 285. This principle is particularly applicable here given the allegations of confusion in the Complaint. (See Complaint ¶ 37 (recounting a product review finding Equal Parts "almost identical to Caraway")).

to protection and a likelihood that Equal Parts's use of the Caraway Mark will cause confusion in the marketplace as to the source or sponsorship of the products at issue. See Alzheimer's Disease, 307 F. Supp. 3d at 284.

Equal Parts does not dispute that Caraway has alleged having a valid trademark. Any argument to the contrary would be meritless. A mark must be distinctive -- that is, "serve[] to identify a particular source," Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) -- to be protectible. Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir. 1997). "A registered mark enjoys a presumption of distinctiveness." Alzheimer's Disease, 307 F. Supp. 3d at 285. In this case, Caraway has alleged both that the Caraway Mark is registered on the USPTO Principal Register and that Caraway owns this registration. The Caraway Mark is therefore entitled to a presumption of distinctiveness based on these allegations.

Equal Parts does dispute whether its use of the Caraway Mark can create a likelihood of confusion as a matter of law. But this argument is also meritless. A likelihood of confusion is determined through application of the eight Polaroid Factors. "There is no requirement that a plaintiff address the Polaroid factors in its pleading." Eliya, Inc. v. Kohl's Dep't Stores, No. 06 Civ. 195, 2006 WL 2645196, at *3 n.2

27

(S.D.N.Y. Sept. 13, 2006). "Likelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." Van Praagh v. Gratton, 993 F. Supp. 2d 293, 303 (E.D.N.Y. 2014) (citing cases). "A motion to dismiss will be granted for failure to plead likelihood of confusion only if no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could prove." LBF Travel, Inc. v. Fareportal, Inc., No. 13 Civ. 9143, 2014 WL 5671853, at *8 (S.D.N.Y. Nov. 5, 2014) (internal quotation marks and citation omitted).

Caraway has alleged that Equal Parts's use of the Caraway Mark is done "to advertise the Equal Parts brand" and "is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff." (Complaint ¶¶ 90, 93.) Elsewhere in the Complaint, Caraway has alleged that third parties have considered the Caraway Pans and Equal Parts cookware to be "almost identical." (See id. ¶ 37.) These allegations are akin to those the Second Circuit has found sufficient in a similar context. Rescuecom, 562 F.3d at 130-31 ("Rescuecom has alleged that [Google's use of Rescuecom's

28

trademark in its Adwords program] does [cause likelihood of confusion or mistake], in that would-be purchasers (or explorers) of its services who search for its website on Google are misleadingly directed to the ads and websites of its competitors in a manner which leads them to believe mistakenly that these ads or websites are sponsored by, or affiliated with Rescuecom."). The Court cannot conclude in the face of these allegations that no reasonable factfinder could find a likelihood of confusion.

Alzheimer's Disease, the case Equal Parts relies on as support for its argument that "keyword advertising of this nature, without a claim that the advertisement itself infringed on the Plaintiff's trademark, does not support a claim of trademark infringement" (February 18 Letter at 3), is inapposite. Equal Parts points to the following language from Alzheimer's Disease:

> With respect to the Association's claim regarding AFA's purchase of Association Marks as keywords and metatags, the proper comparison is between the resulting ads for AFA and Association advertisements or other search results. This is how consumer confusion would manifest itself. The mere fact of AFA's purchase of the Association Marks either verbatim, as with the keyword "alzheimer's association," or nearly verbatim, as with the keyword "alzheimer's association memory walk," *see* Ex. 97, cannot in and of itself cause confusion.

307 F. Supp. 3d at 291. The Court does not disagree with the above-quoted analysis. But this means only that whether a

likelihood of confusion has been created by the use of a trademark for keyword advertising requires an evidentiary review of "the offending ads in context." Id. The Alzheimer's Disease Court was able to conduct such a review given the case's procedural posture following a bench trial. Id. (discussing trial exhibits).

At the current stage of the instant suit, however, no evidence has been -- or need be -- adduced. And as discussed previously, Caraway is not relying solely on the purchase of the Caraway Mark to support its claims. It is thus plausible that Caraway could present evidence of ads that allow a reasonable factfinder to determine that the ads are similar in appearance and meaning and that Equal Part's use of the Caraway Mark creates a likelihood of confusion. Nothing further is needed for Caraway's trademark infringement claims to survive Equal Parts's motion to dismiss.

## IV.   ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendant Pattern Brands, Inc. doing business as Equal Parts to dismiss the complaint of plaintiff Caraway Home, Inc. ("Caraway") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (see Dkt No. 19) is **DENIED IN PART** and **GRANTED IN PART** as set forth above. In particular, Counts

30

One through Six, which allege various causes of action arising from infringement of its trade dress, are **DISMISSED** without prejudice, but Counts Seven through Nine remain; and it is further hereby

**ORDERED** that Caraway either file an amended complaint or notify the Court that it wishes to rest on the complaint as filed within twenty (20) days of the date of this Order.

**SO ORDERED.**

Dated: New York, New York
       1 April 2021

Victor Marrero
U.S.D.J.